Filed 5/3/22  P. v. Mata CA5
(opinion on transfer from Supreme Court)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>ISIDORO MATA,<br><br>　　Defendant and Appellant. | F080013<br><br>(Super. Ct. No. 1219225)<br><br><br>**OPINION** |

---

## THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Louis M. Vasquez, Daniel B. Bernstein, and William K. Kim, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*]Before Hill, P.J., Detjen, J. and Peña, J.

-ooOoo-

## INTRODUCTION

A jury convicted defendant Isidoro Mata of multiple counts, including first degree murder and three counts of attempted murder, in connection with a series of drive-by shootings in which defendant was the driver. Following the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for resentencing pursuant to Penal Code section 1170.95, asserting he was entitled to resentencing under the new laws. (Undesignated statutory references are to the Penal Code.) After appointing defendant counsel and receiving briefing by the parties, the court denied the petition, stating the murder conviction was based on theories of premeditation and deliberation and aiding and abetting a firearm discharge from a motor vehicle, rather than a now invalidated theory of murder. The court reasoned the jury found true the "special allegation" that defendant "acted with an intent to kill that was deliberate and premeditated." Defendant appealed the denial of his petition.

We previously affirmed the trial court's order, concluding the record of conviction established defendant was ineligible for relief from his murder conviction under section 1170.95. We also concluded defendant was ineligible for relief from his attempted murder convictions because the plain language of section 1170.95, subdivision (a) limited relief to persons convicted of felony murder or murder under a natural and probable consequences theory.

Defendant petitioned for review. The California Supreme Court granted and held the petition and deferred action pending its consideration and disposition in *People v. Lopez*, S258175. It then transferred the case back to us with directions for our court to vacate our decision and reconsider the cause in light of Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) and *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*). Defendant now argues he is entitled to relief from his attempted murder convictions in

2.

light of the developments in the law.  The People disagree, again arguing defendant's petition was properly denied.

We affirm the denial of defendant's petition.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2006, defendant drove his car into a Modesto neighborhood and stopped in front of four different residences while his front seat passenger, Angel Cabanillas (Angel), pointed and fired a rifle at various people, resulting in the death of one victim and injury to another.  As a result of the incident, a jury convicted defendant of multiple counts, including first degree murder in violation of section 187.  The following summary of facts presented by the prosecution at trial was detailed in our prior opinion.

"On June 10, 2006, around 6:00 p.m., members of the Marquez family, including a number of children, were in the front yard of their house on Montavenia Drive.  Alicia Marquez was wearing a red shirt and sitting on a car parked in the driveway.  A teal Honda Accord drove slowly by the house.  Three Hispanic males with 'bald heads' were in the car.  Monica Marquez assumed the car's occupants were Sureños.  Someone in the car made a gang sign of the number '13' with his hand.  The Honda returned and stopped in front of the house.  Angel pointed a rifle at Alicia and then at the others in the front yard.  He also commented on Alicia's red shirt and cursed at her in Spanish.

"After leaving the house on Montavenia Drive, the Honda stopped at a house two doors down on Parducci Drive.  Esteban, who was known to associate with Sureños, approached the car and spoke with the Honda's occupants.  Esteban's sister, Azalia Berumen, came out of the house and started hitting the Honda and arguing with Angel.  Angel pointed a rifle at Berumen and said, 'South Side.'  Then the Honda drove away.  Shortly thereafter, witnesses heard gunshots which sounded like they came from Almaden Way, the street above Montavenia Drive and Parducci Drive.

"The same evening, a large birthday party for Robert Alcazar was in progress at his house on Almaden Way.  The party was attended by numerous adults and children, none of whom were known to be connected with any gang.  Activities were set up in front of the house, including a basketball court and bounce house.  Sometime around 6:00 p.m., the Honda drove slowly by Alcazar's house.  Alcazar observed that there were three

3.

'bald' Hispanic males in the Honda. Angel leaned out of the window and made a 'What's up?' gesture with his hands.

"The Honda drove by and stopped in front of the house several more times. During these stops, Angel pointed his rifle at Johnny Silva, who was wearing a red and white San Francisco 49ers jersey. He also fired the rifle multiple times into the open garage of Alcazar's house, where partygoers were attempting to take cover. Alcazar's close friend, Manuel Rayas, was struck and collapsed.

"Rayas died from a single gunshot wound to his chest. The bullet fragment extracted during Rayas's autopsy was consistent with a .22–caliber bullet. The 'clean' shape of Rayas's wound indicated the bullet did not hit any other object before hitting his body.

"Lisa Averell, a witness who attended the party on Almaden Way, identified Angel from a photograph as the shooter and identified [defendant] in court as the driver of the Honda.

"Finally, around 6:10 p.m., the Honda car stopped at a house on Spokane Street, where Andres Esparza was standing in the driveway talking on a portable telephone. Esparza's father was also sitting outside the house. One of the car's occupants said, 'We're scrapas.' Esparza answered, 'What do I have to do with [them]?' A rifle came out of the passenger window and was aimed at Esparza. Esparza threw himself down on the ground and was shot in the leg. The Honda then took off.

"The parties stipulated to the following facts: At 6:11 p.m., on June 10, 2006, the first of a series of 911 calls was made to Stanislaus County emergency dispatch regarding the shooting on Almaden Way. At 6:14 p.m., a 911 call came in reporting the shooting on Spokane Street. At 6:23 p.m., a Modesto Police Department patrol car reported that it was following a teal Honda. The Honda was followed until it was stopped at 6:27 p.m., by three police patrol cars. When the Honda was stopped it was being driven by [defendant], Angel was the right front passenger, and Pedro [Cabanillas, Angel's brother,] was in the backseat. The Honda previously had been purchased for [defendant] by his father.

"According to police testimony, at the time of the traffic stop, [defendant], Angel, and Pedro all had shaved heads; Angel and [defendant] both wore white T-shirts, and Pedro wore a dark colored shirt." (*People v.*

4.

*Mata* (Sept. 21, 2012, F061132) [nonpub. opn.] [2012 Cal.App. Unpub. Lexis 6877 at pp. *3–*6.)**[1]**

The jury convicted defendant of 11 offenses, including first degree murder (§ 187; count I), attempted murder (§§ 664, 187; counts II, III, & VII), shooting at an occupied building (§ 246; counts IV–VI), shooting at a person from a motor vehicle (former § 12034, subd. (c); count VIII), assault with a firearm (§ 245, subd. (a)(2); counts IX–X), and active participation in a criminal street gang (§ 186.22, subd. (a); count XI) in connection with the drive-by shootings.  The verdict form as to count I reflects the jury found defendant guilty of first degree murder in violation of section 187, subdivision (a) and further found that he "did act intentionally, deliberately and with premeditation." The jury also found numerous sentence enhancement allegations to be true and concluded with regard to the attempted murder charges that defendant acted "intentionally, deliberately, and with premeditation.

***Petition for Resentencing***

In February 2019, defendant submitted a petition for resentencing pursuant to section 1170.95, using a form prepared by Re:Store Justice, a cosponsor of Senate Bill 1437.  He checked boxes stating a charging document had been filed against him allowing the prosecution to proceed under a felony-murder theory or the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under a felony-murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437).  He also checked a box indicating that he was convicted of first degree murder but could not now be convicted because he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder

---

**[1]**We take judicial notice of the record and our prior unpublished opinion in this matter pursuant to Evidence Code section 451, subdivision (a).

5.

in the first degree, and he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. He also checked a box stating, "I request that this court appoint counsel for me during this re-sentencing process." He did not attach or include any additional information or documents to his petition.

The People responded to the petition, arguing defendant was not entitled to relief because the facts of the case established he was a major participant in the offense who acted with reckless indifference to human life. They also argued Senate Bill 1437 is unconstitutional. Defendant, represented by appointed counsel, replied to the People, arguing there was a reasonable doubt as to whether he aided and abetted Angel because Angel may have shot out of self-defense. He also asserted the prosecution argued and the court instructed the jury on the natural and probable consequences theory.

The court denied the petition, concluding defendant "failed to establish a prima facie case that he is entitled to relief." The court reasoned:

> "The appellate opinion affirming the [defendant]'s conviction and sentence reflects that [defendant] drove his car into a Modesto neighborhood and stopped in front of 4 different residences while his front seat passenger pointed and fired a rifle at various people resulting in the death of one victim and injury to another. [Defendant] was convicted of first degree murder under the theory that the murder was premedi[t]ated, deliberate and intentional.

> "A review of the record of conviction and court file establishes that the jurors were instructed with Cal Crim 521 which outlined the theories of 1st degree murder as follows:

> "Theory 1: Willful, deliberate and premeditated intention to kill

> "and

> "Theory 2: Aiding and abetting a firearm discharge from a motor vehicle.

> "The jurors were further instructed that they need not agree on the theory of murder so long as they all agreed that defendant was guilty of 1st

6.

degree murder under one of the theories. However, in this case the jurors unanimously agreed that that [*sic*] [defendant] was guilty of 1st degree murder under the theory that he acted with an intent to kill that was deliberate and premeditated by finding true the special allegation. This finding prevents [defendant] from establishing a prima face case for relief under … section 1190.75 [*sic*] in that the Petition wrongfully asserts that he 'did not, with the intent to kill, aid, abet[,] counsel, command, induce, solicit or assist the actual killer[.]'"

## DISCUSSION

Defendant challenges the denial of his petition for resentencing. We affirm the court's denial.

### 1. Senate Bill 1437 and Senate Bill 775

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019. Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It amended section 188, which defines malice, and section 189, which defines the degrees of murder to address felony-murder liability. (Stats. 2018, ch. 1015, §§ 2–4.)

Accordingly, section 188 now provides that, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime*." (§ 188, subd. (a)(3), italics added.) The change reflects the Legislature's intent that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, section 189 previously stated, "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288,

7.

288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree."  Senate Bill 1437 amended section 189, in part, by adding subdivision (e), which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

The legislation also added section 1170.95, which provides a procedure by which defendants whose cases are final can seek retroactive relief if the changes in the law would affect their previously sustained convictions.  (Stats. 2018, ch. 1015, § 4.) Initially, section 1170.95 permitted those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …."  (Stats. 2018, ch. 1015, § 4, subd. (a).)  Pursuant to Senate Bill 775, effective January 1, 2022, the Legislature amended the language of section 1170.95 to expand the scope of the petitioning procedure to defendants convicted of attempted murder or manslaughter under a now prohibited theory.  The legislation also clarified some of the procedural requirements in the statute.

Pursuant to amended section 1170.95, upon receiving a petition, if the petitioner has requested counsel, the court must appoint counsel to represent the petitioner. (§ 1170.95, subd. (b)(3).)  "After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief."  (§ 1170.95, subd. (c).)  If the petitioner has made such a showing that the

petitioner is entitled to relief, the court "shall issue an order to show cause." (*Ibid.*) "If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid.*)

Within 60 days after the order to show cause has issued, the trial court must then hold a hearing "to determine whether to vacate the murder, attempted murder, or manslaughter conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) At the hearing. the burden of proof is on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under the amended laws. (§ 1170.95, subd. (d)(3).)

The admission of evidence at the evidentiary hearing "shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) "The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (*Ibid.*) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid.*)

2. **Analysis**

In his initial briefing, defendant asserted the court erred in denying his section 1170.95 petition as to his murder conviction and the three attempted murder convictions. He argued, though there was an instruction regarding direct aiding and abetting with shared knowledge and intent, the prosecutor relied upon an indirect aiding and abetting

9.

theory in which murder was a natural and probable consequence of shooting at an occupied dwelling. He contended the special findings of premeditation established only that his codefendant acted with premeditation. He asserted there was no evidence of shared knowledge of intent to kill based upon a conspiracy or prior agreement to kill. He further contended, even if he had known his codefendant intended to shoot weapons at houses, he did not necessarily know his codefendant would shoot at people or commit murder. He argued, based upon the record and the prosecutor's argument to the jury, "the murder conviction was based squarely on the [natural and probable consequences] doctrine." Accordingly, his case should be remanded so that a hearing can be held on the petition. The People responded the court properly denied the petition because the jury's verdict on the murder charge included a finding defendant intended to kill the victim, rendering him ineligible for relief under section 1170.95. They further argued the jurors could have inferred defendant had the "intent to kill perceived gang rivals based on evidence that, before the fatal shooting, [defendant] drove with [Angel] to two other locations, where [Angel] pointed his rifle at persons while uttering gang slogans, and then drove past another house a few times before [Angel] opened fire and shot … Rayas in the front yard." They also contended defendant never raised his claim that section 1170.95 extends to attempted murder convictions below, so the claim was forfeited. Additionally, the People asserted section 1170.95 did not extend to those convicted of attempted murder. They argued, irrespective, the jury's verdicts on the attempted murder counts included a finding defendant intended to kill the victims, rendering him ineligible for relief. We initially concluded the court did not err in denying the petition because the record reflected the jury found, beyond a reasonable doubt, defendant acted with the intent to kill during the commission of the murder, and, under the plain language of former section 1170.95, defendant was not eligible for relief from his attempted murder convictions.

In his supplemental brief following the California Supreme Court's transfer of this case back to our court, defendant does not further challenge our previous conclusion that the record established he was categorically ineligible for relief from his murder conviction. But he asserts remand is necessary "to permit the prosecution to attempt to demonstrate beyond a reasonable doubt that [he] is subject to conviction of attempted murder with intent to kill" in light of the changes to section 1170.95 enacted by Senate Bill 775. The People respond, irrespective of the changes Senate Bill 775 made to section 1170.95, defendant is ineligible for relief from his attempted murder convictions because the jury expressly found he harbored the intent to kill with regard to the murder and attempted murder counts.

As before, we conclude defendant is ineligible for relief from his murder conviction in light of the jury's findings. Furthermore, because defendant did not petition for relief from his attempted murder convictions below, we decline to address the merits of his claims for relief from those convictions.

Following the issuance of our initial opinion, the California Supreme Court issued its decision in *Lewis*, in which it condoned the trial court's use of the record of conviction in concluding whether a defendant had made a prima facie showing of eligibility for relief under section 1170.95. (*Lewis*, *supra*, 11 Cal.5th at p. 971 ["The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].) The *Lewis* court cautioned that the prima facie inquiry under subdivision (c) of section 1170.95 is "limited," and "'[a] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" "'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Ibid*.)

11.

And here, the record presented to the trial court reflects the People prosecuted defendant for first degree murder under two different theories:  "One, malice aforethought, and two, shooting from a motor vehicle."  The court explained in its instructions that "[e]ach theory of murder has different requirements."  The court instructed the jury on the first theory of willful, deliberate, and premeditated murder:

> "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately and with premeditation.  [¶] The defendant acted willfully if he intended to kill.  The defendant acted deliberately … if he carefully weighed the considerations for and against his choice, and, knowing the consequences, decided to kill.  [¶] The defendant acted with premeditation if he decided to kill before committing the act that caused death."

The court then instructed the jury on the second theory of first degree murder arising from the discharge of a firearm from a vehicle:

> "The defendant can also be found guilty of first degree murder if the People have proved that the defendant murdered by shooting a firearm from a motor vehicle.  The defendant committed this kind of murder if:  [¶] One, Angel Cabanillas shot a firearm from a motor vehicle; [¶] Two, Angel Cabanillas intentionally shot at a person who was outside the vehicle; [¶] Three, Angel Cabanillas intended to kill a person; [¶] And four, the defendant aided and abetted Angel Cabanillas in this offense."

While the court instructed the jury on the natural and probable consequences doctrine, the jury convicted defendant of murder in the first degree in violation of section 187, subdivision (a) and expressly found true a separate allegation as to this count on the verdict form that "defendant did act intentionally, deliberately, and with premeditation." We presume the jury followed the jury instructions regarding the findings needed to support such a conclusion.

Thus, the jury's verdict establishes it concluded beyond a reasonable doubt that defendant acted intentionally and deliberately with regard to the murder by "carefully weigh[ing] the considerations for and against his choice, and, knowing the consequences, decided to kill," and he acted with premeditation in that "he decided to kill before

12.

committing the act that caused death." Accordingly, the court did not err in concluding the jury's verdict rendered him ineligible for relief because he was convicted under a theory of murder liability—direct aiding and abetting—that is still valid after Senate Bill 1437. (See *People v. Bentley* (2020) 55 Cal.App.5th 152, 154 [concluding defendant was ineligible for resentencing under § 1170.95 given jury's express finding murder was intentional and perpetrated by means of discharging firearm from motor vehicle with intent to inflict death]; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 [Sen. Bill 1437 did not alter law regarding criminal liability "of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator'"]; *People v. Coley* (Mar. 23, 2022, A159927) __ Cal.App.5th __, __ [2022 Cal.App. LEXIS 319 at *9; 2022 WL 1127328] ["A theory of direct aiding and abetting remains a valid theory after Senate Bill No. 1437"]; accord, *People v. Lewis*, *supra*, 11 Cal.5th at p. 959.)

In so concluding, we find unpersuasive defendant's contention the jury's verdict only reflects its conclusion "that a premeditated murder was a natural and probable consequence of driving around while [Angel] pointed a rifle out the car window, ultimately shooting at houses of rival gang members." Such an interpretation belies the language of the jury's verdict. To find as such would require us to disregard the express language of the verdict form and to discount the jury's ability to faithfully follow the court's instructions. We decline to do so. Rather, because the record of conviction rebuts defendant's allegation he could not presently be convicted of murder because of changes to section 188 or 189 effective January 1, 2019, the court did not err in denying his petition for relief.

Furthermore, as the People note, defendant did not challenge his attempted murder convictions in his petition below. Due to the procedural posture of this case, we decline to address defendant's eligibility for resentencing on his attempted murder convictions because he has not filed a petition for resentencing on these counts in the trial court. It is

13.

for the trial court to determine in the first instance whether the petitioner has stated a prima facie case of entitlement to relief under section 1170.95, subdivision (c). Defendant retains any remedies available to him in the trial court.

## DISPOSITION

The court's order denying defendant's section 1170.95 petition for resentencing is affirmed.